IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

WENDY SANDBERG and
CATHY McNULTY,                                          No. 10-CV-1273-HZ

                    Plaintiffs,                         OPINION AND ORDER

        v.

CITY OF NORTH PLAINS and
KAREN-LEE STOLTE,

                    Defendants.

Daniel J. Snyder
Carl Lee Post
Erin C. McCool
LAW OFFICES OF DANIEL SNYDER
1000 S.W. Broadway, Suite 2400
Portland, OR 97205

        Attorneys for Plaintiffs

1 - OPINION AND ORDER

Karen M. O'Kasey
Kari A. Furnanz
Mark C. Sherman
HART WAGNER, LLP
1000 SW Broadway, 20th Floor
Portland, OR 97205

     Attorneys for Defendants

HERNANDEZ, District Judge:

     Now before me is the motion for summary judgment (doc. #19) filed by defendants City

of North Plains (the "City") and Karen-Lee Stolte ("Stolte") (collectively, "Defendants").

Defendants seek summary judgment on all seven of the claims alleged by Wendy Sandberg

("Plaintiff" or "Sandberg").[1]

     Plaintiff's first four claims for relief allege discrimination by the City in violation of ORS

659A.203, 659A.199, 659A.218, and 659A.230, Oregon's whistleblower protection statutes.

Plaintiff brings her fifth claim for relief pursuant to 42 U.S.C. § 1983 ("§ 1983") for retaliation in

violation of her First Amendment right to free speech. Lastly, Plaintiff's seventh claim for relief

alleges common law wrongful discharge against the City.[2]

---

[1] Although the Complaint alleges thirteen claims for relief, there are actually only twelve claims for relief because Plaintiff, in error, fails to include an eleventh claim for relief. Compl., ¶¶ 137-153. With respect to the dispositive twelve claims for relief, the first seven claims include allegations by Sandberg against Defendants. The remaining five claims for relief involved allegations by Cathy McNulty ("McNulty") against Defendants. McNulty's claims, however, have since been dismissed pursuant to a stipulated motion to dismiss filed on May 31, 2011.

[2] Plaintiff concedes summary judgment is appropriate on her sixth claim for relief, which alleges procedural due process violations in violation of § 1983. Compl., ¶¶ 107-116. Accordingly, I do not address whether Plaintiff's sixth claim for relief survives summary judgment.

2 - OPINION AND ORDER

For the reasons discussed below, Defendant's motion for summary judgment is GRANTED as to Plaintiff's third, sixth, and seventh claims for relief and is DENIED as to Plaintiff's first, second, fourth, and fifth claims for relief.

## BACKGROUND

Plaintiff was hired by the City in June 2005 as a clerk for the City Municipal Court (the "Municipal Court"). Sandberg Decl., ¶ 3. Plaintiff's initial job duties included accepting fines and bail money submitted by the public and writing receipts for payments received. Id., ¶ 4. Her original supervisor was Sandra Quesnoy ("Quesnoy"), the Court Coordinator, who reported to Stolte, the Finance Director for the City. Id., ¶ 3.

In December 2006 and in March 2007, Plaintiff notified Stolte of her concerns that there "was a problem with the payments received by the Municipal Court." Id., ¶ 22. Plaintiff notified Stolte that although citizens were calling in and telling her that they had paid their fines in cash, there was nothing in the Municipal Court records showing the payments had been received. Id.

On June 15, 2007, Plaintiff reported to Stolte and former Chief of Police, Scott Whitehead ("Whitehead")[3], that money orders and cash payments submitted by citizens were missing. Id., ¶¶ 21-24, 27, 28; Whitehead Decl., ¶ 7. Plaintiff asked Whitehead to keep her name out of any of the investigations stemming from her reports out of fear for her safety and retaliation by others at the City. Sandberg Decl., ¶ 29. In response to Plaintiff's complaint, Whitehead instructed Stolte on June 18, 2007, to investigate the matter. Whitehead Decl., ¶ 8.

On June 18, 2007, Plaintiff was notified that the Washington County Fraud and Identity Theft Enforcement ("FITE") team had been called in to investigate her reports of missing funds

---

[3] Whitehead was also a member of the City's human resources team.

and that Quesnoy had been placed on administrative leave pending the investigation.  Sandberg
Decl., ¶ 31.  From July to December 2007, Plaintiff herself participated in an in-house audit of
the missing monies.  Id., ¶ 33.  During the period in which the in-house audit took place,
Sandberg made a report in November 2007 to Whitehead and Blake Boyles ("Boyles"), the
Public Works Director for the City and member of the City's human resources team, that Stolte
was reporting an "outrageous" amount of overtime she was working on the in-house audit.  Id., ¶
38.  Plaintiff stated Stolte bragged to McNulty and Plaintiff that she included in her reported
overtime hours the time she took to do her laundry and go on walks.  Id.; McNulty Decl., ¶ 15.

On February 21, 2008, Plaintiff was presented with her 2007 performance appraisal by
Stolte.  Sandberg Decl., ¶ 41; McCool Decl., Ex. C, p. 12.  Plaintiff felt her performance
appraisal was "unfair" and on March 25, 2008, Plaintiff told Whitehead and Boyles that she was
upset about her 2007 performance evaluation and that she feared "Stolte was retaliating against
her" for her reports leading to the investigation of Quesnoy.  Whitehead Decl., ¶ 13; Sandberg
Decl., ¶ 42. Whitehead and Boyles discussed Plaintiff's concerns and later that day, March 25,
2008, Boyles "instructed" Plaintiff to write a response to her 2007 performance evaluation and to
submit it to Boyles or Whitehead.  Whitehead Decl., ¶ 13; McCool Decl., Ex. C, p. 12.  On
March 28, 2008, Plaintiff provided Whitehead with a copy of her response to her 2007
performance evaluation, and Whitehead told her he would place it in her personnel file.
Whitehead Decl., ¶ 13.

In May 2008, Lisa Gibson ("Gibson") was hired as the new City Recorder.  Sandberg
Decl., ¶ 47; McCool Decl., Ex. A, p. 36.  Gibson was placed in the same "front-office" as

Plaintiff and Plaintiff's friend, Cathy McNulty ("McNulty").[4]  Sandberg Decl., ¶ 47; McCool Decl., Ex. A, p. 36.  Although Gibson, McNulty, and Plaintiff were the only three people working in the "front-office," the record demonstrates Plaintiff and McNulty did not get along with Gibson.  McCool Decl., Ex. B, pp. 3-6; McCool Decl., Ex. A, p. 36.  Donald Otterman ("Otterman"), the City Manager, testified that Plaintiff was "abrupt" with Gibson and testified that he issued several letters of expectations due to his observations that Gibson, McNulty, and Plaintiff were not relating to one another in a professional manner.  Id.

The relationship between Gibson, McNulty, and Plaintiff was so contentious that on August 8, 2008, while Otterman was attending the "Garlic Festival," he received a phone call from Gibson telling him that he needed to return to the office because McNulty and Plaintiff were criticizing her in front of the public and that they would not stop despite her requests to do so.  McCool Decl., Ex. B, p. 9.  Subsequent to receiving Gibson's phone call, Otterman returned to the office and met with Gibson, McNulty, and Plaintiff the same day, August 8, 2008.[5]  Id.

On November 21, 2008, McNulty and Plaintiff filed a complaint against Gibson based in part on their observations that Gibson came into work late and would "underperform" while at work.  McNulty Decl., ¶ 19; Sherman Decl. (doc. #36), Ex. F, p. 6.  On December 5, 2008, Stolte held a meeting with McNulty and Plaintiff and told them that Gibson was overworked and that they needed to "cut Ms. Gibson some slack."  McNulty Decl., ¶ 20.  McNulty further testified

---

[4] McNulty was known as Cathy Wiggins during her tenure with the City.  McNulty Decl., ¶ 1.  McNulty worked as the Utility Billing Clerk, but was terminated on August 14, 2009.  McNulty Decl., ¶ 3.

[5] Otterman testified that during his meeting with the three women he had mentioned that he was aware Gibson, McNulty, or Plaintiff had reported "certain things" about him in his performance appraisal.  McCool Decl., Ex. B, p. 12.

5 - OPINION AND ORDER

that Stolte told them that she would discipline McNulty and Plaintiff if they continued their

behavior.  Id.; Sandberg Decl., ¶ 54.

The next month, on December 8, 2008, Stolte announced in a morning meeting that

Gibson, McNulty, and Plaintiff were no longer allowed to take breaks at the same time because

there was "not enough [phone] coverage" in the front-office.[6]  Sandberg Decl., ¶55; Whitehead

Decl., ¶ 14; McCool Decl., Ex. A, p. 36; Sherman Decl. (doc. #36), Ex. F, p. 9.

In February 2009, Quesnoy pled guilty to embezzling over $248,000 from the City.

Sandberg Decl., ¶ 57; Whitehead Decl., ¶ 15.  Plaintiff was asked by the Washington County

District Attorney (the "Washington County DA") to testify at Quesnoy's sentencing hearing in

March 2009.  Sandberg Decl., ¶ 58.  Plaintiff complied with the Washington County DA's

request, testifying that her work environment was "awful" and that she was "worried about the

security of [her] job every day."  Id.  After Quesnoy's sentencing hearing, Plaintiff continued to

place documents in her personnel file expressing her concerns that she was being harassed for

reporting events leading to Quesnoy's criminal conviction.  Id., ¶ 60.

On March 9, 2009, Stolte took a medical leave of absence.  McCool Decl., Ex. A, p. 8.

On April 3, 2009, while she was on medical leave, Stolte directed Sandberg to prepare a weekly

report documenting all payments received, all monies received for suspensions, all collections

information, and all monies received on active tickets.[7]  Id., ¶ 63; McNulty Decl., ¶ 23.  While on

---

[6] For two years prior to December 8, 2008, McNulty and Plaintiff had been taking their
morning breaks together.

[7] Boyles testified that requiring office employees to provide weekly written reports
documenting how their time was spent was not uncommon and that other employees besides
Sandberg were required to provide weekly reports.  McCool Decl., Ex. C, p. 40.

6 - OPINION AND ORDER

medical leave Stolte also sent an email to Otterman, Municipal Judge Leskin, and Plaintiff stating she wanted to stop all negotiations regarding an agreement with a particular collection agency until she had returned to work.  Sandberg Decl., ¶ 65.

On May 5, 2009, after returning from medical leave, Stolte discovered the documents Plaintiff had been placing in her personnel file which stated, among other things, that she was being harassed by Stolte for reporting information leading to Quesnoy's conviction. McCool Decl., Ex. C, p. 21; Id., Ex. H, p. 1.  That same day, May 5, 2009, Stolte made the decision to terminate Plaintiff.  Sandberg Decl., Ex. 13, pp. 1-2.

On May 15, 2009, a meeting was held with Plaintiff, Stolte, Boyles, and Whitehead.  Id., ¶ 72.  At the meeting, Plaintiff was given a letter terminating her employment.  Id., ¶ 72; Id., Ex. 13, pp. 1-2.  The letter was signed on May 15, 2009, by Stolte, Boyles, and Whitehead stating that Plaintiff's actions were "insubordinate" and "unprofessional and offensive."  McCool Decl., Ex. A, p. 14; Sandberg Decl., Ex. 13, pp. 1-2.  Stolte testified Plaintiff's actions were "unprofessional and offensive" because Plaintiff did not speak with Stolte about the documents before placing them in her personnel file.  McCool Decl., Ex. A, p. 14.  Stolte, however, also testified that Plaintiff was entitled to having the documents placed in her personnel file and that her actions were not in fact "insubordinate."  Id., Ex. A, p. 38; Id., Ex. B, p. 40.  Stolte further testified that the decision to terminate Plaintiff on May 5, 2009, was a unanimous decision by members of the human resources team–her, Boyles, and Whitehead.  McCool Decl., Ex. A, p. 3; Id., Ex. C, pp. 23, 27-28; Whitehead Decl., ¶ 22; Sandberg Decl., Ex. 13, p. 2.  Contrary to

7 - OPINION AND ORDER

Stolte's testimony, however, Boyles and Whitehead testified that the decision to terminate

Plaintiff had been made by Stolte and Otterman.[8]  Id.

### STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  The moving party

bears the initial burden of demonstrating the absence of a genuine issue of material fact.  E.g.,

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if it could affect the

outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986).  The moving party need only demonstrate that there is an absence of

evidence to support the non-moving party's case.  Celotex Corp., 477 U.S. at 325.  The burden

then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue

for trial.  Id. at 324.

Once the moving party has met its burden, the burden shifts to the non-moving party to

"set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at

248 (quotation omitted).  The non-moving party must come forward with more than "the mere

existence of a scintilla of evidence."  Anderson, 477 U.S. at 252.  Thus, "[w]here the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986) (citation omitted).  "Credibility determinations, the weighing of the evidence, and the

---

[8] Otterman testified that Stolte had recommended to him that Plaintiff be terminated.
McCool Decl., Ex. B, p. 11.

drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling

on a motion for summary judgment ." Id.  However, conclusory, speculative testimony in

affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary

judgment.  See Thornhill Publ'n Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

Lastly, "in ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be

believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v.

Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255).

## DISCUSSION

### I. Evidentiary Objections

The parties make numerous evidentiary objections.  I address their objections in turn.

#### A. Plaintiff's Evidentiary Objections

##### 1. Exhibits 11 and 12 Attached to the Sherman Declaration (Doc. #21)

Plaintiff objects to Exhibits 11 and 12 attached to the Sherman Declaration (doc. #21) on

the following bases: (1) they contain statements which have been improperly authenticated by

witnesses with the requisite personal knowledge required under Rule 901 of the Federal Rules of

Evidence ("FRE"); (2) they contain inadmissible hearsay as defined under FRE 801 and 802; (3)

are irrelevant pursuant FRE 401 and 402; and (4) are unduly prejudicial to Plaintiff under FRE

403.  Resp., p. 15.  I do not rely on Exhibits 11 and 12 when reaching my conclusions and as

such, I decline to rule on Plaintiff's objections.

##### 2. Exhibits Attached to the Sherman Declaration (Doc. #36)

In her sur-reply, Plaintiff objects to all the exhibits attached to the Sherman Declaration

(doc. #36) on the basis that the new evidence contained therein was untimely submitted.  The

9 - OPINION AND ORDER

exhibits to which Plaintiff objects do not affect my ultimate determination.  Accordingly, I

decline to rule on Plaintiff's objection.

**B. Defendants' Evidentiary Objections**

**1.  McCool Declaration**

Defendants object to Exhibits G and M attached to the McCool Declaration as

inadmissible hearsay pursuant to FRE 801 and 802.  I do not consider Exhibits G or M when

addressing Defendants' motion for summary judgment and therefore, I decline to rule on

Defendants' objection.

**2. McNulty Declaration**

Defendants object to a number of paragraphs in the McNulty Declaration on the basis that

they are irrelevant pursuant to FRE 401 and 402, are inadmissible hearsay pursuant to FRE 801

and 802, or are conclusory opinions without citation to any substantiating facts, citing FRE 701[9],

Ward v. Westland Plastics, Inc., 651 F2d 1266, 1270-71 (9th Cir. 1980), and United States v.

Durham, 464 F.3d 976, 982 (9th Cir. 2006) in support of their proposition.

With respect to paragraph 16, McNulty testified at her deposition that "Ms. Sandberg told

me that Ms. Stolte confronted her in the office and was yelling at her regarding the overtime

---

[9] FRE 701 provides as follows:

If a witness is not testifying as an expert, testimony in the form of an opinion is
limited to one that is:
(a) rationally based on the witness's perception;
(b) helpful to clearly understanding the witness's testimony or to
determining a fact in issue; and
(c) not based on scientific, technical, or other specialized knowledge
within the scope of Rule 702.

report."  McNulty Decl., ¶ 16.  Plaintiff asserts this statement is admissible as a present-sense impression and to show Plaintiff's state-of-mind.  Plaintiff's argument is not well taken.  Plaintiff offers this evidence to prove the truth of the matter asserted and accordingly, is it is inadmissible hearsay.  Defendants' objection to paragraph 16 is SUSTAINED.  With respect to the remaining paragraphs to which Defendants object, I do not rely on them when addressing the motion for summary judgment.  As such, I decline to rule on Defendants' objections to these paragraphs.

### 3. Sandberg Declaration

Defendants object to Exhibits 2 and 10 attached to the Sandberg Declaration as inadmissible hearsay pursuant to FRE 801 and 802 and as irrelevant pursuant to FRE 401 and 402.  I do not consider Exhibits 2 or 10 when making my conclusions and therefore I decline to rule on Defendants' objection.

Defendants also object to a number of paragraphs in the Sandberg Declaration as irrelevant pursuant to FRE 401 and 402, as inadmissible hearsay pursuant to FRE 801 and 802, or as conclusory lay witness testimony pursuant to FRE 701.

With respect to paragraphs 7 and 42, the portions of these paragraphs on which I rely are not inadmissable hearsay and are relevant.  Accordingly, Defendants' objections to paragraphs 7 and 42 are OVERRULED.  With respect to paragraph 39, Plaintiff's statement that Boyles told her that "Otterman told . . . Stolte that 'the girls' were concerned about the amount of overtime hours . . . Stolte was reporting" is inadmissible hearsay and despite Plaintiff's assertion to the contrary, is offered to prove the truth of the matter asserted.  Accordingly, Defendants' objection to paragraph 39 is SUSTAINED.   I decline to rule on Defendants' remaining objections to the

11 - OPINION AND ORDER

Sandberg Declaration because I do not rely on them for the purpose of this motion for summary judgment.

### 4. Shanda Sorber Declaration

Defendants object to the Shanda Sorber ("Sorber") Declaration in its entirety as irrelevant pursuant to FRE 401 and 402. I do not rely on any of the statements in the Sorber Declaration and therefore I decline to rule on Defendants' objection.

### 5. Whitehead Declaration

Defendants object to a number of paragraphs in the Whitehead Declaration on the basis that they include conclusory opinions under FRE 701 or are inadmissible hearsay pursuant to FRE 801 and 802. Although I rely on portions of paragraphs 7 and 22 in the Whitehead Declaration, the portions on which I rely do not constitute inadmissible hearsay. Accordingly, Defendants' objections to paragraphs 7 and 22 are OVERRULED. Because I do not rely on any of the other paragraphs in the Whitehead Declaration, I decline to rule on Defendants' objection to those paragraphs.

## II. Defendants' Motion for Summary Judgment

### A. State Law Whistleblower Claims

Plaintiff's first, second, and fourth claims for relief allege whistleblower discrimination and retaliation in violation of ORS 659A.199, 659A.203, and 659A.230, respectively. ORS 659A.199 provides in relevant part as follows:

> It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation.

ORS 659A.199(1).

ORS 659A.203 states:

[I]t is an unlawful employment practice for any public employer to: . . . Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of . . . [a] violation of any federal or state law, rule or regulation by the state, agency or political subdivision . . . .

ORS 659A.203(b).

ORS 659A.230 provides:

(1) It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported criminal activity by any person, has in good faith caused a complainant's information or complaint to be filed against any person, has in good faith cooperated with any law enforcement agency conducting a criminal investigation, has in good faith brought a civil proceeding against an employer or has testified in good faith at a civil proceeding or criminal trial.

Both parties agree that to establish a prima facie case of retaliation under ORS 659A.199, ORS 659A.203, and 659A.230, Plaintiff "must show 1) that she was engaging in a protected activity, 2) that she suffered an adverse employment decision, and 3) that there was a causal link between the protected activity and the adverse employment decision." E.g., Ruggles v. Cal. Polytechnic State Univ., 797 F.2d 782, 785 (9th Cir. 1986); Shultz v. Multnomah Cnty., No. 08-CV-886-BR, 2009 WL 1476689, at *13 (D. Or. 2009) (same). Defendants do not argue Plaintiff fails to make a showing regarding the first and second prongs of her prima facie case for retaliation. Instead, Defendants only contend Plaintiff fails to establish a causal link between her termination and reports of missing funds in 2007 and her testimony at Quesnoy's sentencing hearing in February 2009.

13 - OPINION AND ORDER

Both parties agree on the same legal standard for causation: "whether 'engaging in the protected activity was one of the reasons for [the adverse employment action] and that but for such activity [the employee] would not have been fired.'"  E.g., Whitley v. City of Portland, 654 F. Supp. 2d 1194, 1223 (D. Or. 2009) (citations omitted); see also Hardie v. Legacy Health Sys., Inc., 167 Or. App. 425, 435 (2000) (same).  Under this analysis, "the employee's protected activity must have been a 'substantial factor' in the motivation to discharge the employee." Estes v. Lewis and Clark College, 152 Or. App. 372, 381 (1998) (citing Holien v. Sears, Roebuck and Co., 298 Or. 76, 90 n.5 (1984)); see also Huff v. City of Portland, Civ. No. 05-1831-AA, 2008 WL 1902760, at *6 (D. Or. 2008) ("Plaintiff bears the burden of establishing that her alleged disclosures [under ORS 659A.203(1)] constituted "a substantial factor" in the discontinuation of her employment.") (Citing McPhail v. Milwaukie Lumber Co., 165 Or. App. 596, 603 (2000)). "[T]o be a substantial factor, the employer's wrongful purpose must have been 'a factor that made a difference' in the discharge decision." Estes, 152 Or. App. at 381(citing Nelson v. Emerald People's Util. Dist., 116 Or. App. 366, 373 (1992)).

Plaintiff asserts she was terminated for reporting that Stolte was harassing and retaliating against her for reporting Quesnoy's embezzlement and for testifying at Quesnoy's sentencing hearing.  Resp., pp. 21-22.  She argues that because harassment and retaliation for reporting embezzlement and testifying at judicial proceedings are themselves violations under Oregon whistleblower statutes, it follows that reporting the harassment and retaliation themselves are also protected.  Id.

As noted above, ORS 659A.199 makes it an unlawful employment practice for an employer to discharge an employee "for the reason that the employee has in good faith reported

information that the employee believes is evidence of a violation of a state or federal law, rule or regulation." ORS 659A.199(1). Also noted above, ORS 659A.203 makes it an unlawful employment practice for a public employer to "[p]rohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of . . . [a] violation of any federal or state law, rule or regulation by the state, agency or political subdivision . . . [or] [m]ismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the state, agency or political subdivision . . . ." ORS 659A.203(b)(A)-(B). Finally, as noted above, ORS 659A.230 makes it is unlawful "for an employer to discharge . . . or in any manner discriminate or retaliate against an employee . . . for the reason that the employee has in good faith reported criminal activity by any person . . . ., has in good faith cooperated with any law enforcement agency conducting a criminal investigation, . . . or has testified in good faith at a . . . criminal trial." ORS 659A.230(1).

Based on the record before me, Plaintiff has presented sufficient evidence creating a genuine issue of material fact demonstrating a causal link between her termination and her protected activity of reporting retaliation and harassment by Stolte. In particular, Plaintiff presents evidence showing that on March 25, 2008, she told Whitehead and Boyles that she was upset about her 2007 performance evaluation by Stolte and expressed she was afraid that Stolte was retaliating against her for reporting Quesnoy's embezzlement. Sandberg Decl., ¶ 42. She also presents evidence showing that after Whitehead and Boyles discussed Plaintiff's concerns, Boyles "instructed" Plaintiff that same day, March 25, 2008, to submit her concerns in writing to either him or Whitehead. McCool Decl., Ex. C, p. 12. The record shows that on March 28,

15 - OPINION AND ORDER

2008, Plaintiff provided Whitehead with a response to her 2007 performance evaluation and with her complaints of harassment and retaliation by Stolte. Whitehead Decl., ¶ 13. In response, Whitehead told Plaintiff he would put her comments in her personnel file. Id.

The record demonstrates that Stolte went through Plaintiff's personnel file after returning from medical leave on May 5, 2009, and discovered Plaintiff's complaints. In a document dated May 6, 2009, Stolte memorialized she had discovered Plaintiff's complaints "accus[ing] the city management of harassment based on a July 2007 incident of theft by another employee." McCool Decl., Ex. A, pp. 12, 14; Id., Ex., C, p. 21; Id., Ex. H, p. 1. A few weeks later, May 15, 2009, Plaintiff was terminated. Sandberg Decl., Ex. 13, pp. 1-2. The close temporal proximity between Stolte's discovery of Plaintiff's complaints about harassment by Stolte and Plaintiff's termination less than two weeks later, by itself, supports an inference that Plaintiff was terminated for reporting retaliation by Stolte. See Scruggs v. Josephine Cnty. Sheriff's Dep't, Civil No. 06-6058-CL, 2008 WL 608581, *8 (D. Or. 2008) ("Generally, causation may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.") (Citing Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987)).

Plaintiff also proffers evidence showing that although Stolte, Boyles, and Whitehead signed Plaintiff's termination letter dated May 15, 2009, Boyles and Whitehead stated that the decision to discharge Plaintiff was ultimately made by Stolte and Otterman. McCool Decl., Ex. C, pp. 23, 27-28; Whitehead Decl., ¶ 22; Sandberg Decl., Ex. 13, p. 2. Otterman himself stated Stolte had recommended to him that Plaintiff be terminated. McCool Decl., Ex. B, p. 11. A

reasonable fact finder could conclude that under these circumstances Stolte harbored some animus towards Plaintiff for reporting Stolte's alleged harassment and retaliation and that Stolte's animus tainted the decisions of Boyles and Whitehead.  See Whitley, 654 F. Supp. 2d at 1216-17 ("[W]here the person who exhibited discriminatory animus influenced or participated in the decision-making process, a reasonable fact finder could conclude that the animus affected the employment decision.") (Internal quotation marks and citation omitted).

I conclude that based on the record before me, there is sufficient evidence creating a genuine issue of material fact as to whether there was a causal link between Plaintiff's reports of harassment by Stolte and her termination.

I also conclude Plaintiff proffers sufficient evidence creating a genuine issue of material fact as to whether her testimony at Quesnoy's sentencing hearing in March 2009 and her termination a few months later in May 2009 violated ORS 659A.230.  As noted above, ORS 659A.230 makes it unlawful to discharge an employee "for the reason that the employee . . . has testified in good faith at a civil proceeding or criminal trial."  I acknowledge that Plaintiff was recognized by the City as an "outstanding employee" during the third quarter of 2007, and at Stolte's recommendation was promoted to the position of "Court Coordinator" with a pay increase that same month, November 2007.  Sherman Decl. (doc. #21), Ex. 1, pp. 17-18; Id., Ex. 5, p. 14; Id., Ex. 6, p. 1.  The evidence proffered by Plaintiff, however, shows that over one year after being recognized as an outstanding employee and receiving her promotion, Plaintiff testified at Quesnoy's criminal sentencing hearing in March 2009 and was terminated soon after in May 2009.  Sandberg Decl., ¶ 58.  Additionally, the record also shows that Whitehead–one of the four individuals who had signed off on Plaintiff's termination–was not only aware that

Plaintiff testified at Quesnoy's sentencing hearing in 2009, but also was present at the hearing. Viewing the evidence in the light most favorable to Plaintiff and drawing all justifiable inferences in her favor, Plaintiff presents sufficient evidence creating a genuine issue of material fact as to whether there was a causal connection between Plaintiff's testimony at Quesnoy's criminal hearing and her subsequent termination a few months later.  See Tudor Delcey v. A-Dec, Inc., Civil Case No. 05-1728-PK, 2008 WL 123855, at *12-13 (D. Or. 2008) (proximity in time between plaintiff's protected activity and defendants' adverse action is sufficient to establish causation for purposes of establishing a prima facie case of retaliation).

In addition to the above, Plaintiff also presents evidence creating a genuine issue of material fact regarding Defendants' motive.  An "employer engages in an unlawful employment practice under ORS 659A.203(1)(b) if it characterizes the employee's resistance to the employer's violations of ORS 659A.203(1)(c) and (d) as 'insubordination' and subsequently disciplines the employee for that 'insubordination.'"[10]  Huber v. Or. Dep't of Educ., 235 Or. App. 230, 240 (2010).  Although Plaintiff's May 15, 2009, termination letter, states that Plaintiff was terminated for "insubordination," Stolte testified the actions Plaintiff took were actually "things that [Plaintiff] was entitled to do . . . according to [C]ity policy."  Sandberg Decl., Ex. 13, pp. 1-2; McCool Decl., Ex. A, pp. 37-38.  Similarly, Otterman testified that the contents of the documents Plaintiff had placed in her personnel file by the human resources team were not insubordinate. McCool Decl., Ex. B, pp. 39-41.  This additional evidence creates a genuine issue of material

---

[10] Under ORS 695A.203(c) and (d), "it is an unlawful employment practice for any public employer to: . . . (c) Require any employee to give notice prior to making any disclosure or engaging in discussion described in [ORS 659A.203]" or "(d) Discourage, restrain, dissuade, coerce, prevent or otherwise interfere with disclosure or discussions described in [ORS 659A.203]."  ORS 659A.203 (c)-(d).

fact as to whether there was a causal link between Plaintiff's protected activities and her discharge.

In their reply brief Defendants argue there was no causal link between Plaintiff's protected activities and her termination because: (1) Judy Clarke ("Clarke"), the outside HR consultant, recommended Plaintiff be discharged; (2) Plaintiff presents no evidence she ever brought a formal or even informal complaint of harassment and retaliation by Stolte to the attention of anyone; (3) the City Recorder complained about Plaintiff to Stolte; (4) Stolte told Boyles that Plaintiff's communications regarding court procedures were poor; and (5) Plaintiff placed documents memorializing her allegations of harassment and retaliation in her personnel file without Stolte's knowledge.  Defendants' arguments are unavailing.

First, although Clarke recommended Plaintiff be discharged, there is no evidence demonstrating she had any actual authority to terminate Plaintiff.  Clarke's recommendation that Plaintiff be discharged simply does not establish a lack of a causal link between Plaintiff's protected activities and her termination.

Second, Defendants' contention that Plaintiff presents no evidence she ever brought a formal or informal complaint of harassment and retaliation to the attention of Boyles, Whitehead, or Otterman belies the record.  As noted above, Plaintiff explicitly reported to Whitehead and Boyles that she "was afraid that Ms. Stolte was retaliating against her."  Sandberg Decl., ¶ 42.

Finally, and perhaps more important, Defendants' alternative reasons for terminating Plaintiff–including that Gibson complained about Plaintiff to Stolte, that Stolte complained to Boyles that Plaintiff's communications were poor, and that Plaintiff placed her complaints of harassment and retaliation in her personnel file without Stolte's knowledge–do not negate the

existence of a causal link.  Rather, at a minimum, they create a genuine issues of material fact as to whether a causal connection existed between Plaintiff's termination and her reports of harassment.

In sum, viewing the evidence in the light most favorable to Plaintiff and drawing all justifiable inferences in Plaintiff's favor, I conclude a reasonable jury could find a causal link existed between Plaintiff's protected activities and Defendants' adverse employment decision. The City's motion for summary judgment against Plaintiff's first, second, and fourth claims for relief pursuant to ORS 659A.203, 659A.199, and 659A.230, respectively, is DENIED.

**B. ORS 659A.218 Disclosure of Plaintiff's Identity**

Plaintiff's third claim for relief alleges violations of ORS 659A.218 by the City.  ORS 659A.218 provides that the "identity of [an] employee who discloses ["matters described in ORS 659A.203 (1)(b)"] . . . shall not be disclosed by a public employer without the written consent of the employee . . . ."  ORS 659A.218(1).  Plaintiff asserts Defendants violated ORS 659A.218 because Otterman informed Stolte that "the girls" reported she was fraudulently reporting overtime hours and moreover, because Stolte discovered Plaintiff's disclosures of harassment and retaliation by Stolte when going through Plaintiff's personnel records.  Plaintiff's arguments are unavailing.

As noted above, Plaintiff's statement that Boyles told her that Otterman told Stolte "the girls" had reported Stolte was fraudulently overstating her overtime hours is inadmissible hearsay and therefore amounts to evidence I will not consider.  In addition, Plaintiff points to no authority standing for the proposition that Stolte's own discovery of Plaintiff's complaints of retaliation in Plaintiff's personnel records amounts to an improper "disclosure" as contemplated within the

meaning of ORS 659A.218.  Based on the evidence offered by Plaintiff and viewing it in the

light most favorable to Plaintiff, I conclude that no reasonable jury could find that the City

disclosed Plaintiff's identity in violation of ORS 659A.218 in this instance.  Defendants' motion

for summary judgement against Plaintiff's third claim for relief is GRANTED.

### C. Plaintiff's First Amendment Retaliation Claim Under § 1983

Plaintiff's fifth claim for relief alleges Defendants violated her First Amendment right to

free speech pursuant to § 1983 by retaliating against her for disclosing Quesnoy's embezzlement,

for disclosing Stolte's alleged fraudulent time sheet reports, and for disclosing Defendants'

alleged acts of retaliation and harassment arising from her whistleblowing activities.  A First

Amendment retaliation claim involves the following five-step sequential analysis:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff
> spoke as a private citizen or public employee; (3) whether the plaintiff's protected
> speech was a substantial or motivating factor in the adverse employment action; (4)
> whether the state had an adequate justification for treating the employee differently
> from other members of the general public; and (5) whether the state would have
> taken the adverse employment action even absent the protected speech.

E.g., Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009).

Plaintiff bears the burden on the first three steps and must establish all of them to prevail.

Id.  The burden shifts to the government to prove the last two steps of the sequential analysis.  Id.

at 1071.  I address the steps of the sequential analysis in turn.[11]

---

[11] "In order to state a claim under section 1983, a plaintiff must show (1) that the conduct
complained of was committed by a person acting under color of state law; and (2) that the
conduct deprived the plaintiff of a constitutional right."  Lebbos v. Judges of Superior Court,
Santa Clara Cnty., 883 F.2d 810, 817 (9th Cir. 1989) (quotation marks and citations omitted).

### 1. Whether Plaintiff Spoke on Matters of Public Concern

Defendants contend the record is devoid of any evidence demonstrating they retaliated against Plaintiff in violation of her First Amendment right to free speech.  Plaintiff argues that the underlying actions of her reports as they relate to Quesnoy's embezzlement and Stolte's fraudulent reporting of overtime hours amounts to criminal activity and gross mismanagement of public funds.  She further asserts that her reports of unlawful retaliation and harassment for "partaking in the protected activity of whistleblowing" amounts to a matter of public concern. Resp., p. 26.  Plaintiff's arguments are persuasive.

"Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'"  Johnson v. Multnomah Cnty., Or., 48 F.3d 420, 422 (9th Cir.1995) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)).  "[S]peech that deals with 'individual personnel disputes and grievances; and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'"  Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003) (quoting McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983)).  "'Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.'"  Johnson, 48 F.3d at 422 (quoting Connick, 461 U.S. at 147–48).  This "inquiry is purely a question of law." E.g., Eng, 552 F.3d at 1070; see also Connick, 461 U.S. at 148 n.7 ("The inquiry into the protected status of speech is one of law, not fact.").

Here, Plaintiff's reports of embezzlement by a government employee and complaints of retaliation for reporting such criminal activity clearly involve matters of public concern because

they involve unlawful conduct by government employees and illegal activity within a

government agency.  See Thomas v. City of Beaverton, 379 F.3d 802, 809 (9th Cir. 2004)

("Unlawful conduct by a government employee or illegal activity within a government agency is

a matter of public concern."); Shepard v. City of Portland, Civil No. 09–0021–AA, 2011 WL

5282607, at *22 (D. Or. 2011) (plaintiff sufficiently established he was speaking on a matter of

public concern where his § 1983 claim involved "allegedly unlawful discrimination and

retaliation by public officials").  Based on the record before me, I conclude Plaintiff's speech

involved matters of public concern.

### 2. Whether Plaintiff Spoke In Her Capacity as a Private Citizen

"[W]hen public employees make statements pursuant to their official duties, the

employees are not speaking as citizens for First Amendment purposes, and the Constitution does

not insulate their communications from employer discipline."  Garcetti v. Ceballos, 547 U.S.

410, 421 (2006).  The Ninth Circuit has held that "statements are made in the speaker's capacity

as citizen if the speaker had no official duty to make the questioned statements, or if the speech

was not the product of performing the tasks the employee was paid to perform."  Posey v. Lake

Pend Oreille School Dist. No. 84, 546 F.3d 1121, 1127 n.2 (9th Cir. 2008) (internal citations and

quotation marks omitted).  The determination of whether a person spoke in her capacity as a

private citizen or a public employee is a mixed question of law and fact.  Id. at 1129.  "While the

question of the scope and content of a plaintiff's job responsibilities is a question of fact, the

ultimate constitutional significance of the facts as found is a question of law."  Eng, 552 F.3d at

1071 (quoting Posey, 546 F.3d at 1129-30).   The inquiry into whether the speech was made

pursuant to an employee's official duties "should be practical and look beyond the job description

to the duties the employee actually performs." Huppert v. City of Pittsburg, 574 F.3d 696, 704 (9th Cir. 2009) (citation omitted).

Defendants assert Plaintiff's report to Whitehead about missing judicial monies was directly related to her official duties she was paid to perform as a Municipal Court clerk. Defendants' argument, however, misses the mark. There is no evidence indicating it was part of Plaintiff's official tasks in June 2007 to complain to Whitehead, the then-Chief of Police, that money orders and cash payments submitted by citizens on fines were missing. The record is also devoid of any evidence demonstrating that it was part of Plaintiff's official tasks to report to Whitehead and Boyles that she was being retaliated against by Stolte for reporting Quesnoy's embezzlement activities.

Assuming the evidence as true and drawing and all justifiable inferences in Plaintiff's favor, Plaintiff creates a genuine issue of material fact as to whether Plaintiff spoke as a private citizen rather than a public employee in this instance. See Anthoine v. N. Cent. Cnty. Consortium, 605 F.3d 740, 750 (9th Cir. 2010) (holding plaintiff presented an issue of fact as to whether he spoke as a private citizen, rather than a public employee, in reporting defendant's misrepresentations).

### 3. Whether Plaintiff's Speech Was a Substantial or Motivating Factor

I turn next to the third step of the sequential analysis–whether Plaintiff's protected speech was a substantial or motivating factor in Defendants' adverse employment action. There are three ways in which a plaintiff can show that retaliation was a substantial or motivating factor behind a defendant's adverse employment actions. Coszalter, 320 F.3d at 977. "First, a plaintiff can introduce evidence regarding the proximity in time between the protected action and the

allegedly retaliatory employment decision, from which a jury logically could infer [that the plaintiff] was terminated in retaliation for his speech." Id. (internal quotation marks and citations omitted). Second, a plaintiff may "introduce evidence that his employer expressed opposition to his speech, either to him or to others." Id. (quotation marks and citation omitted). Third, "the plaintiff can introduce evidence that his employer's proffered explanations for the adverse employment action were false and pre-textual." Id. (quotation marks and citation omitted).

As discussed above, the close proximity in time between Stolte's discovery of Plaintiff's complaints about harassment and retaliation and Plaintiff's termination less than two weeks later supports an inference that Plaintiff was terminated for her protected activity. The evidence presented by Plaintiff is sufficient to raise a genuine issue of material fact as to whether Plaintiff's protected speech was a substantial or motivating factor in her termination. Defendants' motion for summary judgment against Plaintiff's fifth claim for relief is DENIED.[12]

### D. Plaintiff's Wrongful Discharge Claim Against the City

The City contends it is entitled to summary judgment against Plaintiff's seventh for relief for the following reasons: (1) Plaintiff's § 1983 claim provides an adequate remedy, thus precluding her wrongful discharge claim; (2) Plaintiff's whistleblower claims provide an adequate remedy thereby precluding her wrongful discharge claim; and (3) Plaintiff cannot

---

[12] Defendants do not make any arguments in their opening memorandum concerning the last two steps of the sequential analysis–whether Defendants had an adequate justification for treating the employee differently from other members of the general public and whether Defendants would have taken the adverse employment action even absent the protected speech. Accordingly, Defendants fail to meet their burden of proving or disproving the last two steps of the sequential analysis.

establish a causal connection between her discharge and engagement in any allegedly protected activity.

The tort of wrongful discharge is intended to provide a remedy for unacceptable conduct only when no other adequate remedy is available.  See Cantley v. DSMF, Inc., 422 F. Supp. 2d 1214, 1220 (D. Or. 2006) (tort of wrongful discharge "never was intended to be a tort of general application but rather an interstitial tort to provide a remedy when the conduct in question was unacceptable and no other remedy was available") (quotation marks and citations omitted).  If an existing remedy is adequate to protect the interests of society, then the tort remedy of wrongful discharge is precluded.  See Ryan v. HSC Real Estate, NCivil No. 08-1465-KI, 2010 WL 3222443, at *3 (D. Or. 2010).

Plaintiff argues that Oregon courts have explicitly held that ORS 659A.203 does not provide a plaintiff with an adequate remedy and thus, her common law claim for wrongful discharge is not precluded.  She asserts the same analysis applies to ORS 659A.199, ORS 659A.218, and ORS 659A.218, relying on the language of ORS 659A.199(2) stating, "The remedies in this chapter are in addition to any common law remedy or other remedy that may be available to an employee for the conduct constituting a violation of this section."  She argues Oregon courts have previously held that other statutes with similar non-exclusive remedy clauses do not preclude the common law tort of wrongful termination, so it follows that the legislature did not intend to preclude a common law claim under ORS 659A.230.  See ORS 174.020; Olsen v. Deschutes Cnty., 204 Or. App. 7, 13-17 (2006); Love v. Polk Cnty. Fire Dist., 209 Or. App. 474, 482-88 (2006).

26 - OPINION AND ORDER

Plaintiff's arguments fail.  Plaintiff does not reconcile or explain in any way why her wrongful discharge claim is not precluded by her §1983 claim.  "[A] plaintiff suing under § 1983 for First Amendment retaliation has the same remedies as under her wrongful discharge claim . . . ."  Baynton v. Wyatt, 411 F. Supp. 2d 1223, 1225 (D. Or. 2006) (citing Minter v. Multnomah Cnty., No. CV-01-352-ST, 2002 WL 31496404, at *14-15 (D. Or. 2002)).  As discussed above, Plaintiff's § 1983 First Amendment retaliation claim survives summary judgment.  Plaintiff's failure to articulate why her § 1983 First Amendment retaliation claim does not preclude her common law wrongful discharge claim in this instance is fatal.

Furthermore, as discussed above, Plaintiff's ORS 659A.199 claim also survives summary judgment.  ORS 659A.199 by itself "provides an adequate (if not better) remedy" for Plaintiff. See Duran v. Window Prod., Inc., No. CV–10–125–ST, 2010 WL 6420572, at *5 (D. Or. 2010). For this additional reason, Plaintiff's wrongful discharge claim is precluded.

Based on the foregoing reasons, Defendants' motion for summary judgment is GRANTED as to Plaintiff's seventh claim for relief.

### E. New Arguments Raised in Defendants' Reply

Defendants raise a number of new arguments in their reply.  They assert that Plaintiff fails to establish a prima facie case of whistleblower retaliation because: (1) Plaintiff sets forth no facts establishing she was actually subject to harassment and retaliation by Defendants; (2) Plaintiff fails to show she was treated differently by Defendants; and (3) Plaintiff's report about Stolte's alleged misrepresentation about her overtime hours is not protected under ORS 659A.203.  Defendants arguments are unavailing for the following reasons.

27 - OPINION AND ORDER

**1. Whether Plaintiff was Subject to Harassment and Retaliation**

Defendants argue that Plaintiff provides no facts establishing she was actually subject to harassment and retaliation by Defendants and fails to provide a single example of actionable retaliation or harassment. They contend that Plaintiff's alleged harassment and retaliation consists only of subjective, petty grievances demonstrating Plaintiff was discontent with her job. Defendants' arguments are not well taken.

It is undisputed that Plaintiff was terminated by Defendants less than two weeks after Stolte discovered Plaintiff's complaints of harassment and retaliation and within a few months after Plaintiff testified at Quesnoy's criminal hearing. Plaintiff's termination, by itself, is evidence of retaliation by Defendants under the circumstances here. See Tudor, Civil Case No. 05-1728-PK, 2008 WL 123855, at *12-13 (proximity in time between plaintiff's protected activity and defendants' adverse action is sufficient to establish causation for purposes of establishing a prima facie case of retaliation). In addition, the evidence offered by Defendants in support of their proposition that the instances of harassment and retaliation here only demonstrate Plaintiff was discontent with her job simply creates a genuine issue of material fact that Plaintiff was harassed and retaliated against in violation of her protected rights.

**2. Whether Plaintiff was Treated Differently Than Others**

Defendants asserts Plaintiff was not treated differently than others and accordingly, Plaintiff fails to show that her 2007 complaint was the "likely reason" for her discharge in May 2009. "Oregon courts have articulated plaintiff's burden on causation as follows: '[W]hether, in the absence of the discriminatory motive, the employee would have been treated differently.'" Prebe v. Yamhill Cnty., Civil No. 08-603-AA, 2009 WL 2132716, at *8 (D. Or. 2009) (citing

28 - OPINION AND ORDER

Hardie, 167 Or. App. at 433.  As discussed at length above, Plaintiff presents a triable issue of

material fact as to whether Defendants harbored a discriminatory motive when terminating her

and proffers sufficient evidence creating a triable issue of fact as to whether, absent her report of

harassment and retaliation, Defendants would have terminated her.  Plaintiff's argument is simply

unpersuasive.

### 3. Stolte's Alleged Misrepresentation About Her Overtime Hours

Lastly, Defendants assert Plaintiff's report about Stolte's alleged misrepresentation of her

overtime hours is not protected under ORS 659A.203.  Specifically, Defendants contend

Plaintiff's "disagreement" with Stolte about the number of overtime hours she reported does not

amount to a violation of any federal or state law, rule, or regulation.  Defendants' argument

misses the mark.

As discussed above, Plaintiff presents sufficient evidence creating a genuine issue of

material fact that she was terminated for disclosing harassment and retaliation by Stolte–a type of

disclosure protected under ORS 659A.203(1)(b)(A).[13]  Accordingly, even assuming as true that

Plaintiff's disclosure of Stolte's alleged fraudulent reporting of overtime hours does not fall

within the protection of ORS 659A.203, Plaintiff's ORS 659A.203 claim would still survive

---

[13] Defendants rely on Love, 209 Or. App. at 491-93 for the proposition that Plaintiff did
not engage in "objectively reasonable whistleblowing" and that her belief, without more, does not
amount to protected conduct under Oregon whistleblowing statutes.  Defendants' argument is
unavailing because Plaintiff's belief that Stolte harassing and retaliating against her for reporting
Quesnoy's embezzlement amounts to a protected activity which falls under the protection of ORS
659A.203(1)(b)(A).  See See Krouse v. Ply Gem Pac. Windows Corp., Civil No. 10–111–HA,
2011 WL 2971774, at *7 (D. Or. 2011) ("An employee need not be objectively correct about the
existence of a statutory violation to sufficiently state a prima facie claim of retaliation.  Under the
language of the statute, plaintiff must only have believed that the subject of the complaint
violated state law.").

summary judgment.  Defendants' argument is simply inconsequential to my ultimate

determination denying Defendants' motion against Plaintiff's ORS 659A.203 claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED as to

Plaintiff's third, sixth, and seventh claims for relief, and is DENIED as to Plaintiff's first, second,

fourth, and fifth claims for relief.

IT IS SO ORDERED.

Dated this 22nd day of February, 2012.

 /s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge

30 - OPINION AND ORDER